UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LIFEPOINT CORPORATE SERVICES GENERAL PARTNERSHIP and LAKE CUMBERLAND REGIONAL HOSPITAL, LLC, | ) ) ) ) ) | Civil No. 3:22-cv-00029-GFVT |
| Plaintiffs, | ) ) | |
| v. | ) ) | **OPINION** & |
| WELLCARE HEALTH INSURANCE COMPANY OF KENTUCKY, INC., | ) ) ) | **ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiffs' Motion to Remand, premised on the forum defendant rule. [R. 5.] This rule prevents a "properly joined and served" defendant from removing an action against them to federal court if they are a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b)(2). But what if a forum-state defendant who has not yet been served removes the action? This practice, known as snap removal, is a peculiar but permissible result of Congress's choice to include "properly joined and served" in the statute creating the forum defendant rule. Because the Court finds that the statute clearly permits snap removal and that the practice is not an absurd application of the statute's plain text, the Plaintiffs' Motion to Remand **[R. 5]** is **DENIED**.

**I**

The Plaintiffs and Wellcare are parties to a Settlement Agreement resolving disputes that arose under contracts for the provision of emergency services. [R. 1-2 at 4.] A secondary dispute arose under the Settlement Agreement. *Id.* The Agreement required the parties to

resolve the dispute in binding arbitration, so the Plaintiffs initiated arbitration in September 2020. *Id.*; *LifePoint Corp. Servs. Gen. P'ship v. Wellcare Health Ins. Co. of Ky.*, AAA Case No. 01-20-0014-7102. The Arbitrator granted Wellcare's Motion for Summary Judgment and denied the Plaintiffs' Motion for Summary Judgment. *Id.* at 6. The Plaintiffs initiated this action in Franklin Circuit Court on May 18, 2022, seeking an Order vacating the Arbitrator's award. *Id.* They allege that the Arbitrator "ignored [their] material evidence and disregarded well-established Kentucky law." *Id.*

"Five minutes" after the state action was filed, Wellcare filed a separate action to enforce the arbitration award in this Court. [R. 5 at 2]; *WellCare Health Ins. Co. v. LifePoint Corp. Servs.*, Case No. 3:22-cv-00028-GFVT. "The next morning," counsel for Wellcare emailed a copy of the petition in the federal action to counsel for the Plaintiffs. *Id.* Counsel for the Plaintiffs responded with a courtesy copy of the state court petition and asked if Wellcare would accept service. *Id.* at 3.

Rather than accepting service or responding to the communication, Wellcare removed the state action to this Court before the sheriff could serve it.[1] *Id.* Its Notice of Removal states that this Court has diversity jurisdiction over the action because the amount in controversy exceeds $75,000 and there is complete diversity because the Plaintiffs are citizens of Delaware and Tennessee and Wellcare is a Kentucky citizen. [R. 1 at 2 (citing 28 U.S.C. § 1332).]

The amount in controversy and the parties' respective citizenships are not in dispute. Rather, in their Motion to Remand this matter back to Franklin Circuit Court, the Plaintiffs argue that the forum-defendant rule prevents Wellcare, a Kentucky citizen, from removing the action to

---

[1] Now, two separate actions between these parties regarding their arbitration award are pending before this Court. This action, *LifePoint Corp. Servs. v. WellCare Health Ins. Co.*, Case No. 3:22-cv-00029-GFVT, and the separate action, *WellCare Health Ins. Co. v. LifePoint Corp. Servs.*, Case No. 3:22-cv-00028.

2

a federal court in Kentucky. [R. 5 at 1.] The parties' disagreement over this Court's jurisdiction arises from a twelve-word allegation in the Notice of Removal: "WellCare has not been served, so the forum-defendant rule does not apply." [R. 1 at 2.] The Plaintiffs characterize this as "an act of pure gamesmanship" commonly known as "snap removal." [R. 5 at 3.] Wellcare characterizes it as merely "knowing the law and applicable Circuit Court precedent." [R. 8 at 2.]

## II

### A

A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This Court has original "diversity" jurisdiction over a civil action when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" those who are "citizens of different states." 28 U.S.C. § 1332(a)(1). Because federal courts are courts of limited jurisdiction, "the removal statute should be strictly construed," and any doubts should be resolved in favor of remanding the case to state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006); *see also Cole*, 728 F. Supp. at 1307 (citations omitted).

The Plaintiffs' Motion to Remand is based on an exception to diversity jurisdiction: the forum defendant rule. 28 U.S.C. § 1441(b)(2) provides that an action over which the Court would otherwise have diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The parties do not dispute the existence of diversity jurisdiction or that Wellcare is a citizen of Kentucky and therefore a forum defendant. Rather, Wellcare argues that the forum defendant rule has not been triggered in this case because it removed the action before the sheriff

3

served it with the Plaintiffs' state court complaint. [R. 8.] This practice is commonly known as "snap removal." *Id.*

Snap removal is a result of one interpretation of the phrase "properly joined and served." 28 U.S.C. § 1441(b)(2). Some parties and courts believe that, because the statute limits itself to "any of the parties in interest *properly joined and served*," the rule is not triggered until the defendant receives service. *Id.*; *see, e.g.*, *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3rd Cir. 2018). Accordingly, a forum defendant can remove a case to federal court if they do so before receiving service of the state court complaint even though § 1441(b)(2) would bar them from doing so after service. *Id.*

This practice has created a substantial split in authority, including a split between district courts within the Sixth Circuit. The parties rely on opposing sides of this split to support their positions. In opposition to removal, the Plaintiffs rely on numerous in-circuit district court cases rejecting snap removal. [R. 5 at 4-9 (citing, *e.g.*, *Ethington v. Gen. Elec. Co.*, 575 F. Supp. 2d 855, 862 (N.D. Ohio 2008); *Schilmiller v. Medtronic, Inc.*, 44 F. Supp. 3d 721, 726 (W.D. Ky. 2014); *In re Darcovet, Darvon and Propoxyphene Prods. Liab. Litig. v. Eli Lilly and Co.*, 2012 WL 2919219, at *2-3 (E.D. Ky July 17, 2012).] These cases find that snap removal "could not have been the intent of the legislature" and leads to an "absurd" result. *Ethington*, 575 F. Supp. 2d at 862 (internal quotation and citation omitted). Courts rejecting snap removal frequently frame the practice as "gamesmanship." *See, e.g.*, *Schilmiller*, 44 F. Supp. 3d at 726.

In support of removal, Wellcare relies on a line of cases which find that the statutory text unambiguously permits snap removal. [R. 8 at 6-12 (citing, *e.g.*, *Encompass*, 902 F.3d at 152; *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Texas Brine Co., LLC v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020).] These courts typically find that

4

the statute limits its application to "properly joined and served defendants," permitting removal before service. *See id.* They often further conclude that this outcome is not so absurd that courts should defy the statute's plain language. *See id.* The tides of precedent are shifting in this direction. Most notably, the three Circuit Courts which have reached the issue find it is permissible. *Id.*

**B**

The Court must determine whether Congress intended § 1441(b)(2) to permit snap removal. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress.") Though this function is easily stated, it is not easily undertaken. In this matter, illuminating Congressional intent implicates numerous canons of statutory construction. The Court begins by asking whether the statutory text is clear. If so, "the court applies the statute as written." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017). But if the text is ambiguous or leads to an absurd result, the Court inquires further to identify its meaning. *Id.*

**1**

Is § 1441(b)(2) ambiguous? It states that a civil action over which the Court would otherwise have diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This language is clear: if any properly joined and served defendant is a citizen of the forum state, the action may not be removed to federal court. Even the Courts which reject snap removal usually recognize that the statutory text is clear. *See, e.g.*, *Schilmiller*, 44 F. Supp. 3d at 726 ("The plain language of § 1441(b)(2), however, requires

5

proper service for application of the forum defendant rule.") (quoting *United Steel Supply, LLC v. Buller*, 2013 WL 3790913, *4 (W.D. Ky. July 19, 2013)); *Ethington*, 575 F. Supp. 2d at 861 (explaining that cases rejecting snap removal have "generally acknowledged . . . that the plain language of § 1441(b)'s 'properly joined and served' clause would create an exception to the general prohibition on removal by a forum defendant, provided removal was completed before service was perfected"). This Court agrees. The text of § 1441(b) unequivocally permits an unserved forum defendant to remove an action to federal court.

The Plaintiffs present an alternative "plain reading." [R. 5 at 5-6.] Relying on § 1441(b)'s inclusion of the term "any," they argue that the statute assumes that at least one "party in interest" has been "properly joined and served." *Id.* They argue that the prevailing view—that the plain language requires service to trigger the forum-defendant rule—renders "any" superfluous. *Id.*

This argument is known as "the *Hawkins* approach." *See Coburn v. Hixson Weight Loss Ctr. & Shot Spot, M.D., Inc.*, 2022 WL 164541, at *4 (E.D. Tenn. Jan. 18, 2022). When *Hawkins* was decided, § 1441(b) read that non-federal question actions "shall be removable only if none of the parties in interest properly joined and served" is a forum defendant. 28 U.S.C. § 1441(b) (2002), *amended by* 28 U.S.C. § 1441(b)(2) (2011). The *Hawkins* Court concluded that "[t]he 'none' in that statement refers to the 'parties in interest properly joined and served,' which implies that there is at least one defendant that is a party in interest that has been properly joined and served." *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369 (N. D. Ga. 2011).

*Hawkins* is unpersuasive. First, it interpreted statutory language which is no longer in effect. Some district courts continue to rely on *Hawkins*'s reasoning even after § 1441(b) was amended from "none" to "any" "of the parties in interest properly joined and served." *See, e.g.*,

6

*Murphy v. Inman*, 2018 WL 8809349, at *12-13 (E.D. Mich. Feb. 21, 2018); *Coburn*, 2022 WL 164, at *3-4. The change is meaningful and affects the textual analysis. Unlike "none," "any" is not rendered superfluous by reading § 1441(b) to permit snap removal. "Any" still serves a purpose: it specifies that just one defendant must be a "properly joined and served" forum defendant to prevent removal. If "any" were not included, the statute would state that otherwise removable diversity actions "may not be removed if the parties in interest properly joined and served as defendants" are forum defendants. This implies that all defendants, rather than just one, must be a forum defendant to trigger the rule. By specifying that "any" properly joined and served forum defendant precludes removal, Congress made clear that just one forum defendant triggers the rule. Therefore, "any" serves a purpose other than assuming that at least one "properly joined and served" "party in interest" exists. The term is not rendered superfluous by applying the statute before any defendant receives service.

      Second, *Hawkins* was expressly premised on the absence of analysis by any circuit court. 785 F. Supp. 2d at 1366-67 ("[N]o persuasive authority exists in the Eleventh Circuit or any other circuit court of appeals."). This Court benefits from the analysis of three circuit courts of appeal. The Second, Third, and Fifth Circuits all concluded that the plain language of § 1441(b)(2) permits a forum defendant's pre-service removal of a diversity action. *Encompass*, 902 F.3d at 152 ("[W]e conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous."); *Gibbons*, 919 F.3d at 705; *Texas Brine*, 955 F.3d at 486. The Court agrees with those holdings and finds that Wellcare's snap removal complies with the plain language of § 1441(b)(2).

**2**

Does applying the plan meaning of § 1441(b)(2) lead to an absurd result? This is the question that divides courts throughout the Sixth Circuit. The Court enforces the plain language of a statute unless that disposition is "absurd." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)). An absurd result is uncommon. It is insufficient for the Court to merely dislike the result; rather, it must be "patently illogical or contrary to Congress's intent." *Chapman v. Higbee Co.*, 319 F.3d 825, 832 (6th Cir. 2003).

The Plaintiffs invoke several in-circuit district courts which found that snap removal is an absurd application of § 1441(b)(2). For example, *Ethington* concluded that Congress intended the "joined and served" language to "prevent gamesmanship by plaintiffs, who might name an in-state defendant against whom he or she does not have a valid claim in a complaint filed in state court to defeat otherwise permissible removal by the non-forum defendant(s)." 575 F. Supp. 2d at 861. Snap removal "turn[s] Congressional intent on its head by allowing *defendants* to employ gamesmanship." *Id.* at 862 (emphasis in original). *In re Darcovet*, which arose within this District, endorses this analysis. 2012 WL 2919219, at *3; *see also Schilmiller*, 44 F. Supp. 3d at 726 ("The same consideration against gamesmanship would seem to apply when defendants attempt to use the forum defendant rule to their advantage by monitoring the state court docket and quickly removing an otherwise non-removable action before service can be accomplished.").[2]

---

[2] Notably, the court decided *In re Darcovet* in 2012 and prefaced its analysis by stating that "[t]he proper interpretation of the 'properly joined and served' language of the forum defendant rule has not been resolved by the federal appellate courts." 2012 WL 2919219, at *2.

Naturally, Wellcare relies on the circuit cases permitting snap removal. Those cases persuasively conclude that interpreting § 1441(b) to allow snap removal is not absurd. The Second Circuit conducted an in-depth analysis of this issue. *Gibbons*, 919 F.3d at 706. First, it identified the "general purpose" of the removal statute to be protecting out-of-state defendants from state court bias in favor of an in-state plaintiff. *Id.* (citing *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 940 (9th Cir. 2006)). It found that the intent of the "properly joined and served" language is to prevent fraudulent joinder, the practice of plaintiffs naming unnecessary in-state defendants to prevent removal to federal court. *Id.* The court concluded that allowing snap removal does not contravene this intent. *Id.* "Congress may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Id.* Put simply, "properly joined and served" could have been included to balance discouraging gamesmanship with a clear definition of fraudulent joinder.

The Fifth Circuit adopted this reasoning. It emphasized that "the absurdity bar is high, as it should be." *Texas Brine*, 955 F.3d at 486. Ultimately, it concluded that snap removal is "at least rational," even if it appears to be a legislative oversight.[3] *Id.* The Third Circuit similarly concluded that "properly joined and served" provides a bright line rule on fraudulent joinder. *Encompass*, 902 F.3d at 153. Allowing snap removal does not make fraudulent joinder more likely to occur or difficult to identify, so the practice does not contravene the intent behind the "properly joined and served" language. *Id.* Though "this result may be peculiar, . . . the outcome is not so outlandish as to constitute an absurd or bizarre result." *Id.* at 154.

---

[3] The Fifth Circuit also noted that snap removals had occurred when Congress amended § 1441(b) in 2011 and the "properly joined and served" language remained. *Id*. at 486.

9

This Court agrees that allowing snap removal is not an absurd result of enforcing § 1441(b)(2)'s plain meaning.  Congress generally intended the removal statute to protect out-of-state defendants from in-state bias.  *See Encompass*, 902 F.3d at 152.  Recognizing that some plaintiffs may use this to engage in gamesmanship by naming unnecessary in-state defendants to keep the action in federal court, it conditioned the forum-defendant rule on the defendant being "properly joined and served." 28 U.S.C. § 1441(b)(2).  This provides a "bright line" rule to address fraudulent joinder.  *Encompass*, 902 F.3d at 153.  If fraudulent joinder was not clearly keyed to something—Congress determined service was appropriate—courts would have to engage in a much more difficult "inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons*, 919 F.3d at 706.

Thus, the inclusion of "properly joined and served" in § 1441(b)(2) reflects the reality that legislation must sometimes draw a line in order to strike a balance between distinct interests. *See Dep't of A.F. v. Rose*, 425 U.S. 352, 373 (1976).  Congress chose the "properly joined and served" language to draw a "bright line" between preventing fraudulent joinder and limiting diversity jurisdiction to cases without an in-state defendant. *Encompass*, 902 F.3d at 153.  A result is not absurd when it is the consequence of a line which the legislature intentionally drew to balance distinct, and often competing, interests.  And it is evident that this language is intentional.  Congress amended § 1441(b)(2) *after* snap removals had already occurred and did not remove "properly joined and served." *Texas Brine*, 955 F.3d at 486.  Ultimately, reading § 1441(b)(2) to permit snap removal respects the statute's plain meaning and does not lead to an absurd result.

This conclusion is bolstered by a statement made by the Sixth Circuit.  In a footnote, it discussed arguments which had been waived but noted they were meritless.  It stated that

"[w]here there is complete diversity of citizenship . . . the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) (emphasis in original). Numerous in-circuit district courts have minimized the import of this statement, many of which did so in the context of preventing snap removal. *See Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215, 1219 (M.D. Tenn. 2017) ("However, that statement—made without any further elaboration and relegated to a footnote—has repeatedly been characterized as dicta, both within and outside the Sixth Circuit, and is therefore not necessarily followed.") (collecting cases). True, this statement carried minimal weight in *McCall* and was not surrounded by in-depth analysis. But when combined with *unanimous* Circuit approval of snap removal, this Court sees little room to reach a contradictory conclusion. Nor does it desire to do so. While it may be peculiar, allowing snap removal is not an absurd interpretation of the forum defendant rule.

C

The Plaintiffs present three additional arguments supporting their position. First, they invoke a statement by the Supreme Court regarding removal. In *Murphy Bros.*, the Court determined that a defendant's thirty-day timeline to remove a state action to federal court begins on the date it receives formal process, not informal notice of the action. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). It stated, "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* Some courts use this statement to support rejecting snap removal. *See, e.g., Coburn*, 2022 WL 164541, at *3.

11

*Hawkins* notes that "[i]f removal can be effected prior to service, it makes no sense for the removal deadline to begin to run after service of process." 785 F. Supp. at 1370.

*Murphy Bros.* does not support this conclusion because the underlying facts and issues are distinct from the snap removal cases. *Murphy Bros.* was premised on the notion that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." 526 U.S. at 347. Accordingly, defendants should not have a deadline running against them until they are formally "under the court's authority." *Id.* Snap removal is different because, by filing a notice of removal, the defendant is choosing to "engage in litigation" before service rather than a court requiring them to do so. The premise for the Supreme Court's statement that the "time to remove is triggered by simultaneous service of the summons and complaint" is not applicable in the context of snap removal. *Id.*

The Plaintiffs also argue that this case is distinguishable from the cases allowing snap removal because it involves only one "lone forum-defendant." [R. 5 at 8 ("[T]he reported caselaw uniformly rejects the type of single-defendant snap removal that WellCare attempts to accomplish.").] The text and intent of § 1441(b)(2) do not support such a distinction. The forum defendant rule does not distinguish its application on the number of defendants or their characterization as forum or non-forum defendants.

Finally, the Plaintiffs rely on the principle that courts resolve doubts over whether removal is appropriate in favor of remand. [R. 11 at 7]; *Eastman*, 438 F.3d at 549. They argue that "WellCare has provided no justification to depart from the prevailing rule in this Circuit prohibiting forum defendants from using snap removal to circumvent the forum-defendant rule." [R. 11 at 7.] To the contrary, Wellcare relies on the plain text of the statute and three circuit

courts' interpretation of that language. [*See* R. 8.] As explained above, there is good reason to depart from other in-circuit courts' application of § 1441(b)(2). The Court would not portray preventing snap removal as "the prevailing rule in this Circuit," but there is certainly a substantial split between courts nationally and within the Circuit. [R. 11 at 7.] The Court looks forward to the day when the Sixth Circuit provides more clarity on the propriety of snap removal.

### III

The unambiguous statutory text permits snap removal and allowing it does not lead to an absurd result. Perhaps the statute should discourage gamesmanship from both parties. But this judgment is reserved for the legislature, not the judiciary. *See Encompass*, 902 F.3d at 154 ("Reasonable minds might conclude that the procedural result demonstrates a need for a change in the law; however, if such change is required, it is Congress—not the Judiciary—that must act.") Accordingly, and the Court being sufficiently advised, the Plaintiffs' Motion to Remand **[R. 5]** is hereby **DENIED**.

This the 7th day of March, 2023.

Gregory F. Van Tatenhove
United States District Judge